## Case No. 11,505.

QUEEN et al. v. UNION INS. CO.

[2 Wash. C. C. 331.] [1]

Circuit Court, D. Pennsylvania.     Oct. Term, 1808.

MARINE INSURANCE — ABANDONMENT — RECAP-
TURE—SALVAGE— TEMPORARY INTER-
RUPTION OF VOYAGE.

1. Insurance was effected on the ship Experi-
ment, at and from New-York to any ports on
the north side of Jamaica, and at and from the
same, to New-York, with the usual warranties.
The vessel was captured by a Spanish priva-
teer, while proceeding from Falmouth, in Ja-
maica, to Montego Bay; recaptured by the Brit-
ish, carried back to Falmouth, and afterwards to
Montego Bay, where the vessel and cargo were
subjected to a salvage of one-eighth; sold, for
the payment thereof; purchased by the captain,
for the benefit of those whom it might concern;
and the vessel, having completed her lading, re-
turned to New-York, subject to a bottomry bond
for advances made by the consignee; her out-
ward freight having exceeded the salvage and
expenses resulting from the recapture. The in-
sured abandoned, on being informed of the re-
capture. The court held, that there was no
ground for an abandonment.

2. A capture as prize, will authorize an aban-
donment, as soon as notice is received, provided
the loss continue to the time when the abandon-
ment is made.

3. If a recapture is made with a view to sal-
vage, and this does not exceed, with the ex-
penses, one-half of the value of the property,
and the recapture produces only a temporary
interruption of the voyage, the insured cannot
abandon.

4. If the recapture be as prize; or the voyage
be lost, or not worth pursuing; if the salvage be
very high; or if further expenses be necessary,
and the underwriters will not agree to pay them,
the assured may abandon.

[Cited in Dickey v. American Ins. Co., 3
Wend. 662.]

At law.

WASHINGTON, Circuit Justice. This is
an action on a policy of insurance, dated
the 9th August, 1805, on the ship Experi-
ment, on a voyage at and from New-York,
to any port or ports on the north side of
Jamaica, and at and from either or all of
said ports, back to New-York. The policy
was subscribed by the defendants, to the
amount of 10,000 dollars, at a premium of
10 per cent. The policy was in the usual
form, and contained a warranty of Ameri-
can property, and free from any charge or
loss which might arise in consequence of
seizure or detention, on account of illicit or
prohibited trade. On the 28th August, the
ship sailed from New-York on the voyage in-
sured, with a cargo principally on freight,
(12,000 staves, only, being the property of
the owner,) for account, in part, of persons
at Falmouth, on the north side of Jamaica,
and in part for persons at Montego Bay;
at which ports the freight for the goods, in-

tended for them respectively, was to be paid.
The ship arrived in safety at Falmouth, de-
livered that part of her cargo which was
intended for that port, and received the
freight thereon; which, together with the
proceeds of the staves belonging to the own-
ers, was invested in rum at 4s. per gallon.
The whole amount of this investment was
£576. 16s. Jamaica currency. On the 20th
of October, the ship left Falmouth, on her
voyage for Montego Bay, with the rum so
taken in, and the residue of her original
cargo; and after having proceeded about five
miles, she was brought to by a Spanish
privateer, and was taken possession of, but
within about four hours afterwards, she
was recaptured by a British sloop of war,
and conducted back to Falmouth, where she
continued, in the possession of the re-captors,
until the 3d of November, when she was
carried by them to Montego Bay, and arrived
there the next day.

From an affidavit, made by the captain and
his mates, at Montego Bay, on the 5th of
November, it would appear, that some sus-
picions existed in the minds of the re-captors,
that the ship was chargeable with having
on board a few parcels of prohibited goods;
and the captain seems to have been, at first,
apprehensive that proceedings would be in-
stituted against her, on that ground. On
the 7th of November, he wrote to his owners,
informing them of his capture and re-cap-
ture, and stating that, in consequence of
some report on shore that the ship had con-
traband goods on board, she had been search-
ed, but that only three packages of nankeens,
belonging to one of the mariners, had been
found; that, on account of these goods, and
three barrels of sugar, also belonging to the
same person, the ship had been seized and
ordered for Montego Bay, where he was
landing the cargo, agreeably to bills of lad-
ing. He adds, that he knows not whether
the vessel will be condemned for this; that
letters from Kingston say she will not, and
that such is the opinion of his consignee;
but that salvage he will have to pay. On
receipt of this letter, the plaintiffs [Queen &
Roberts] gave information of the state of
the ship to the defendants, on the 27th of
November, and offered to abandon; which
was not accepted. By subsequent letters,
from the captain to his owners, but which
had not been received at the time of the
abandonment, it appears, that he still enter-
tained some fears as to the condemnation of
the vessel, but states that she will certainly
be sold, to ascertain the salvage. The ves-
sel and cargo were libelled for salvage, and
one-eighth was decreed to the recaptors.
They were sold on the 30th December, 1805,
and were purchased in, at the instance of the
captain, by Messrs. Longlands, for the ben-
efit of whom it might concern, for £1,000.
She completed her lading at Montego Bay,
and arrived safe at New-York, under a bot-
tomry bond, given to Longlands, for 1,010

[1] [Originally published from the MSS. of Hon.
Bushrod Washington, Associate Justice of the
Supreme Court of the United States, under the
supervision of Richard Peters, Jr., Esq.]

dollars, due to him as a balance of his advances. The whole expenses of the vessel and cargo, occasioned by the capture and recapture, including the salvage, was about 2,364 dollars. The salvage on the vessel was £98, Jamaica currency. The freight received at Montego Bay, amounted to about £806, Jamaica currency.

Two questions have been made in this cause—First, whether the plaintiffs had a right, on the 27th of November, to abandon, and go for a total loss; and secondly, if so, what part of the outward freight the defendants have a right to be credited with.

First. The law respecting the right of abandonment, in a case of capture and recapture, is so intelligibly treated in the three great cases of Goss v. Withers [2 Burrows, 683], Milles v. Fletcher [1 Doug. 231], and Hamilton v. Mendes [2 Burrows. 1198], that it will be only necessary to state the principles which they establish, and then apply them to the present case. These principles are, that a capture, as prize, will authorize the insured to abandon, as soon as he has notice of that fact, provided the loss continues up to the time when the abandonment is made. If the vessel be re-captured by a friend, before the abandonment is made, the right of abandonment may or may not be defeated, according to the circumstances of the case. If the re-capture be made, merely with a view to salvage, and this, together with the expenses, do not exceed one-half the value of the vessel, and the re-capture is productive of a temporary interruption of the voyage, the insured is not at liberty to throw the whole loss upon the underwriters, by abandoning to them. But if the re-capture be with a view to make prize of the vessel; or if, in consequence of the re-capture, the voyage be lost, or not worth pursuing; if the salvage be very high; or, if further expense be necessary, and the insurer will not agree to pay it; the insured is at liberty to abandon. In the case of Goss v. Withers the captors deprived the vessel of all her men but two; the vessel was so disabled in a storm, that she could not have prosecuted her voyage, without refitting, at a considerable expense; the cargo was spoiled, whilst lying at Milford Haven, in possession of the re-captors; one-half the value was paid for salvage; her charter party was dissolved, and her freight lost. In Milles v. Fletcher, the voyage was completely lost, in consequence of the capture and re-capture. But in Hamilton v. Mendes, which was also a case of capture and recapture, the vessel was conducted by the re-captors to the port of her destination, the insured offered to pay the salvage, no injury had been sustained by the vessel, and she earned her freight.

In the case before the court, the vessel was libelled for salvage only, and one-eighth was decreed; the whole outward freight was received, and in possession of the captain,

amounting to more than would have discharged the whole salvage, and expenses resulting from the capture and recapture. The vessel received no injury, and the consequence of the recapture was a temporary obstruction of the voyage; which it was at all times in the power of the captain to have removed, by applying for a commission of appraisement, instead of inviting a sale, which he obviously preferred, with a view to the interest of his owners, and which it is as obvious he promoted by the measure. We do not think that this case affords one solid reason for throwing this vessel upon the hands of the underwriters.

It was said in argument, by the plaintiffs' counsel, that the recaptors had, at one time, a view to the condemnation of the vessel and cargo, on account of contraband goods, which they suspected were on board; but the argument was not pressed; for, if this had been the fact, the insured would have been estopped from recovering any thing, in consequence of his warranty.

It was also contended, that the sale and purchase by Longlands divested the right of the insured, and in this way a total loss took place. The fact, however, is mistaken. She was purchased for the insured, and Longlands was nothing more than the agent and banker of the captain, who found it more to the interest of his owners to make the purchase with the funds of Longlands, than to sell any part of the cargo.

Upon the whole, we are clearly of opinion in favour of the defendants, upon the first point, which renders the consideration of the second unnecessary. Judgment for defendants.